## Fannin v. Commonwealth.

November 1, 1949.

Jasper H. Preece for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

VAN SANT, COMMISSIONER—Affirming.

The appeal is from a judgment convicting appellant of the crime of house breaking and fixing his punishment at confinement in the State Reformatory for a period of one year. The sole contention of appellant in seeking reversal is that the evidence is not sufficient to support the verdict, consequently, the Trial Court erred in overruling his motion for a directed verdict of acquittal made at the conclusion of the evidence introduced by the Commonwealth and renewed at the conclusion of the introduction of all the evidence. Discussion

of this contention necessitates a brief statement of the evidence.

Appellant was indicted for, and convicted of, breaking and entering into, with intent to steal therefrom, a filling station and gasoline pump of another (Matt Stepp) on the night of September 19, 1947. Stepp testified that he visited the filling station near Inez in Martin County, at about 11:00 p. m. and observed a 1936 model Chevrolet automobile parked beside the highway near the filling station. When he approached, two men, whom he could not identify, jumped in the car and drove off. A five (5) gallon can of gasoline was sitting in the driveway leading to the pump. The hose on the pump was loose, and a wrench had been used to pump gasoline out of the tank. Stepp immediately started in pursuit of the Chevrolet and after traveling approximately two miles sighted the car sufficiently to describe it. He then returned to the town of Inez where he found Nelson Booth, a Deputy Sheriff. He and the Sheriff returned and followed the direction the Chevrolet was taking when last seen. They discovered it abandoned near "the Fannin Bridge" about four miles from Inez. The gasoline tank of the Chevrolet was full, and a five gallon empty can was found in the car. On checking the records in the County Court Clerk's office, it was discovered that the car belonged to appellant, within a mile of whose home it was found. The Deputy Sheriff who found the car testified that he had seen appellant seated on the Courthouse wall at Inez in company of two or three other "boys" between 9:00 and 10:00 o'clock on the night the filling station was broken into. Appellant's car was parked nearby. The Deputy Sheriff who arrested appellant, by authority of warrant the following day, testified that appellant claimed the car which had been found the night before and, after filling bond for his appearance in Court, was permitted to take the automobile away. Another witness testified that he saw appellant driving through town (Inez) and a second time sitting in his parked car between 9:00 and 9:30 o'clock on that evening. At those times there were three persons with him. Another witness testified that he saw appellant parked in a 1936 Chevrolet in front of the Courthouse in Inez in company with his brother and two or three other persons, one of whom was a boy by the name of Kirk. He later

saw them parked in the same automobile "down the road" about 200 yards from the filling station. These observations were made by the witness between 9:00 and 10:00 o'clock on the night the crime was committed.

The evidence introduced by appellant sought to establish an alibi. He testified that he had been to Prestonsburg, Beaver Creek, Maytown and Hindman, in Floyd and Knott Counties (Hindman being about 80 miles distant from Inez) on the afternoon and early evening of the night of the commission of the crime; he stopped in Inez for about 20 minutes on his way home; he left Inez about 8:20 o'clock, and drove directly home in company of Joe Perry, arriving about 8:30 p. m. He lives about 5 miles from Inez and the filling station is on the road running between those points. Perry spent the night with him, they retired at 9:00 o'clock, he and Perry slept together in the front room of the house, and neither left the house during the night. When they arrived home they left the automobile parked by the side of the garage near the house. When they awakened the following morning, they learned the car had been "stolen" during the night. Appellant immediately started to town to look for his car. Appellant's mother testified that the boys arrived at her home about 8:00 p. m., retired about 8:30, and she was sure neither of them left the house during the night, because to do so, they would have been required to open and close a door and she would have heard them. She stated that she didn't sleep much during the night and was sure the boys had not "slipped out." The Perry boy corroborated the testimony of appellant.

The evidence is conclusive of the fact that the persons using appellant's car at the time of the robbery were guilty of the offense charged in the indictment. The car was parked at or near the filling station; there was evidence that the tank had been broken into; gasoline had been spilt on the driveway, and one full can of gasoline had been drawn and was left at the scene of the crime. When the car was abandoned, the gasoline tank was found to be full, although the automobile had been driven in excess of 150 miles that afternoon and evening. Appellant did not offer any evidence to show that he bought gasoline after traveling that great dis-

tance. A can similar to the one found at the scene of the crime was discovered in the abandoned car, and appellant admitted ownership of that can. Two persons at the scene of the crime hastily jumped into the car and drove away when their presence was discovered at the filling station. The conclusion that the persons using appellant's car at that time were guilty of the offense charged is the only one that can be drawn from this uncontradicted evidence. It therefore was incumbent on appellant to prove his alibi to the satisfaction of the jury. The testimony offered in support of the alibi, without exception, places him at his residence not later than 8:30 o'clock p. m. and places him in bed at 9:00 o'clock p. m.; but at least three (3) witnesses place him in Inez after 9:00 p. m., and one saw him parked within 200 yards of the filling station after having seen him in Inez later than 9:00 o'clock. Appellant specifically denied that he was parked in the car at any time within 200 yards of the filling station.

Finally, there are two unexplained circumstances which are difficult to resolve in favor of appellant's contention that his automobile was stolen on the night in question. First, although she scarcely slept and would have heard the slight noise of the opening and closing of a door in the house and did hear appellant's automobile when parked by appellant, his mother did not hear the noise of the automobile when it allegedly was stolen and driven away. Second, when discovered parked at the filling station, appellant's automobile was headed toward his home, and, in fleeing, it proceeded along the road leading to his home and was abandoned approximately 1 mile short of that distance. That is the direction the car, under ordinary circumstances and natural conditions, would have been headed if the crime had been committed by appellant and his companion or companions on their way from Inez to appellant's residence; whereas, it is the opposite direction which under ordinary circumstances and natural conditions, it would have been headed had the crime been committed by a person who stole the automobile at appellant's home. It is unlikely a person would steal an automobile, commit another crime, and flee from the scene of the second offense in the direction of the scene of the first.

Thus, the evidence offered in support of the alibi

was contradicted by witnesses and circumstantial evidence. Under these circumstances, it cannot be said that the evidence is more consistent with appellant's innocence than it is with his guilt.

The judgment is affirmed.